IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TYRECE WILLIAMS                                                                                          PLAINTIFF

v.          Civil No. 5:22-cv-05047

SERGEANT PINEDA, Washington
County Detention Center (WCDC);
CORPORAL MYATT, WCDC; and
CORPORAL SENA, WCDC                                                                               DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Tyrece Williams ("Williams"), currently an inmate of the Washington County Detention Center ("WCDC"), filed this civil rights action under 42 U.S.C. § 1983, proceeding *pro se* and in forma pauperis. Williams maintains his constitutional rights were violated when Defendants, acting with malicious intent, denied him a blanket for a twenty-two-hour period.

Defendants seek summary judgment. (ECF No. 12). The Honorable Timothy L. Brooks, United States District Judge, referred the motion to the undersigned for the purpose of making a Report and Recommendation. 28 U.S.C. §§ 636(b)(1) and (3). Plaintiff has responded and the motion ripe for decision. (ECF No. 18).

**I.   BACKGROUND**

Williams is a pretrial detainee (ECF No. 1 at 2) who was booked into the WCDC on January 19, 2022. (ECF No. 14-2 at 1). On February 9, 2022, at approximately 5:30 pm, Sergeant Pineda and Officer Bilberry picked up towels and blankets from the inmates. (ECF No. 14-3 at 3). Williams was housed in N-block on the bottom tier. (ECF No. 14-7 at 22).[1]  He was housed with

---

[1] Williams' deposition.

1

two other inmates and slept on a rack on the back wall of the cell. *Id*. at 24 & 33. When towels and blankets were passed out at approximately 9:30 pm, Williams did not get a towel or a blanket. (ECF No. 14-3 at 1); (ECF No. 14-7 at 27 & 30). He believed "something happened" and "they didn't have enough" but recalls his cellmates received their blankets and towels. *Id*. at 29-30. At an unspecified time, Williams was given a towel so he could shower. *Id*. at 30, 32. Williams describes that the day shift officers typically retrieve the towels and blankets, and then clean ones are distributed within a couple of hours and during the same shift. *Id*. at 36-37.

Williams told Sergeant Pineda and several officers during the day shift (6:00 am to 6:00 pm) that he did not receive a blanket and was told: "It's in the works. We're going to bring it." (ECF No. 14-7 at 34-35). Williams testified he kept getting "pushed off and told he was going to get" a blanket. *Id*. at 35. During second shift (6:00 pm to 6:00 am), Williams repeatedly asked Corporals Myatt and Sena and every officer he talked to for his blanket. (ECF No. 14-3 at 3); (ECF No. 14-7 at 36). At the time, Williams was wearing his uniform and a pair of socks but no underclothes, (ECF No. 14-7 at 32), and he had a towel and a mat. *Id*. at 37.

While Williams could not say what the temperature was in the cell, he said "[t]hey had the air blowing top notch" and the "room was freezing." (ECF No. 14-7 at 37). Williams understood that the air needed to be circulating to "make sure people don't get COVID or colds . . . but I just want – I want a blanket like everyone else." *Id*. at 38. The wall his rack was against was cold. *Id.* at 33. He says he tucked his hands in his shirt and curled up to stay warm. (ECF No. 14-7 at 38). His lips and teeth were "moving." *Id*. When officers performed cell checks, every thirty minutes or so, Williams would tell them he still did not have a blanket. *Id*. at 39-41. Williams felt he was being "pushed off." *Id*. at 35. He did not receive a blanket until approximately 3:00 pm

2

the following day, February 10, 2022, when Sergeant Pineda brought it to him. (ECF No. 14-3 at 3 & 6). Williams testified that as a result of the cold temperature he had the "sniffles a little bit" and a runny nose. (ECF No. 14-7 at 44-45).

Williams believed he was being "discriminated against because everybody – how is everybody else getting th[eir] stuff, you know, and I'm not getting mine." (ECF No. 14-7 at 48). The other inmates in his cell were also sex offenders. *Id*. at 52. To Williams, his cellmates "looked white." *Id*. There were other African Americans housed in N-block, but Williams has "absolutely no idea" if they were also denied a blanket. *Id.* at 53. Williams believed someone who was Marshallese and an inmate named Donovan did not get their blankets. *Id*. at 54. While Williams testified Donovan shared a cell with Moses who was African American, Donovan's race was not provided. *Id*.

When asked what Williams meant by his assertion in the Complaint that Defendants acted with malicious intent, he testified they were "being rude" to him and "brushing [him] off and telling [him]," "Oh, it's in the works, and then you catch an attitude about [him] stead[ily] asking, that's wrong." (ECF No. 14-7 at 56). Williams testified he repeatedly was told: "Oh, it's in the works. Get off the door. It's going to get done." *Id*. at 57. Although Williams initially testified he "never one time said they were trying to punish" him, he later testified that the Defendants being rude to him, brushing him off, and their attitude led him to believe they were punishing him. *Id*. at 56.

When Williams filed a grievance regarding the issue, Corporal Mulvaney responded that "Sergeant Pineda told me he told that next shift that some blankets/towels still needed to be passed

3

out." (ECF No. 14-3 at 4). Williams filed no request for medical services following this incident. *Id*. at 8-19.

During his deposition, Williams testified that when he was young, he was punished by being placed in a very cold closet for long periods of time, (ECF No. 14-7 at 15), causing him to suffer from PTSD.[2]  *Id*. at 13. As a result, Williams testified he gets cold easier and faster than others.  *Id*. at 41-42.  The cold on February 9th-10th made him have flashbacks about "getting put in that closet" which took a mental toll on him.  *Id.* at 45, 58.  Williams asked to speak with the mental health counselor, Ms. Shelia, who counseled and advised him to write "stuff down about my childhood."  *Id*.

By affidavit, Corporal Sena avers he was working the night shift from 6:00 pm to 6:00 am in February of 2022, indicating that throughout the night on February 9, they "replaced blankets and towels that were missing." (ECF No. 14-8 at 1).   Corporal Sena says he "was not made aware that Tyrece Williams did not have a blanket." *Id*.  Further, Corporal Sena asserts that "[a]t no point on February 9, 2022, did Williams mention to me that he did not have a blanket. Williams did not [a]sk me for a blanket – either verbally or in writing." *Id*. at 2. Corporal Sena says he did not intentionally deny or refuse Williams a blanket on either February 9 or 10.  *Id*.  When Corporal Sena returned to work the evening of February 10, the day shift informed him that "Williams said he had not had a blanket the night before." *Id*. Corporal Sena understood that Williams had been given a blanket earlier that day.  *Id*.

---

[2] Post-Traumatic Stress Disorder.

Similarly, the affidavit of Corporal Myatt sates Myatt was not "made aware that Williams did not have a blanket on the night" of February 9. (ECF No. 16-1 at 1). Corporal Myatt further asserts he did not intentionally deny or refuse Williams a blanket on February 9-10. *Id*.

In opposition, Williams states the nightshift Defendants, Corporals Sena and Myatt, "did refuse me my blanket and I have 2 witness[es] who were my cell mates and are willing to testify against all 3 Defendants.³" (ECF No. 18 at 1). Williams further asserts that "[a]ll 3 Defendants did knowingly and unequivocally not give me my blanket back and made me suffer a form of inmate behavior correction." *Id*. Williams maintains he was not causing any type of disciplinary issues and did not have any on record of such during this time frame. *Id*. at 2.

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

³ Williams' response is made under penalty of perjury and therefore meets the requirements of 28 U.S.C. § 1746.

5

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants have moved for summary judgment on the following grounds: (1) no constitutional violation exists; (2) Williams suffered no physical injury; (3) they are entitled to qualified immunity on the individual capacity claims; and (4) there is no basis for official capacity liability to exist.

In general, § 1983 claims involve two essential elements. First, the Defendants must act under color of state law. Second, the alleged wrongful conduct must have deprived plaintiff of a federally protected right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Here, there is no issue as to whether the Defendants acted under color of law. Instead, the inquiry focuses on whether Defendants violated Williams' constitutionally protected rights. Williams has sued the Defendants in both their individual and official capacities.

### A. Individual Capacity Claims

The Court turns first to the individual capacity claims Williams asserts against the Defendants. An individual capacity suit seeks to impose personal liability on a governmental actor for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Under the Due Process Clause of the Fourteenth Amendment "pretrial detainees . . . may [not] be punished . . . . [T]his prohibition against punishment encompasses conditions of confinement." *Karsjen v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021)(citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020)(rejecting application of deliberate indifference standard to claims of pretrial detainees).[4] In Bell, the Court stated that "the proper inquiry is whether [the] conditions amount to punishment of the detainee." *Id.*, 441 U.S. at 535. The Eighth Circuit in *Stearns* stated:

> In *Bell v. Wolfish*, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536-37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. *Id*. at 538. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. *Id*. at 538-39. If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id*. at 539.

*Stearns*, 957 F.3d at 907 (alterations in original).

---

[4] Prior to *Stearns*, the Court of Appeals for the Eighth Circuit, while recognizing the Fourteenth Amendment Due Process Clause applied to pretrial detainees, nevertheless applied the same Eighth Amendment deliberate indifference standard to detainees and convicted inmates. *See e.g., Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996). In *Stearns,* the Eighth Circuit referred to these cases as involving isolated dicta. *Stearns,* 957 F.3d at 908.

7

Pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012)(cleaned up). "In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010); *see also Stearns*, 957 F.3d at 909 ("Importantly, we are concerned with the totality of circumstances of Stearns's confinement and not any particular condition in isolation"). "There is . . . a de minimus level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

It is undisputed that Williams did not have a blanket during the evening hours of February 9th and the morning of February 10th – a period of less than twenty-four hours. He also maintains he was subjected to cold temperatures.[5] *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) ("[T]he length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis"). Williams alleges no other deprivations; Williams had adequate clothing and had been given a towel to shower. Williams could not provide an estimate of the temperature in the cell and did not complain he was cold on nights when he had a blanket. While he maintains he has witnesses, including his former cellmates, who will testify he did not have a blanket during this time, he makes no mention of their being willing to testify as to how cold it was in the cell.[6] There is no suggestion in the record that other inmates complained of the cold temperature. This type

---

[5] WCDC policy provides for detainees to be issued one blanket. (ECF No. 14-6 at 1). Further, WCDC policy provides that "the detention center to be kept at a reasonable temperature and properly ventilated at all times." (ECF No. 14-1 at 2 (Affidavit of Corporal Mulvaney)); (ECF No. 14-6 at 4 (Policy)).

[6] No affidavits were submitted with Williams' response.

8

of short term or temporary deprivation does not constitute punishment in violation of the constitution. *See e.g., O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-85 (8th Cir. 1996)(three days confinement without underwear, blankets, mattress, exercise, and visits did not rise to the level of a constitutional violation); *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995)(detainee, who was placed in a strip cell for two days without clothing, bedding, or running water, failed to show that named prison officials had knowledge of the his conditions of confinement or knew of an excessive risk to his health or safety); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (inmate's deprivation of clothes, running water, hygiene supplies, blanket and mattress for four days did not violate the constitution).[7]

As proof of malicious intent, Williams maintains the Defendants were rude, dismissive, and short with him when he repeatedly requested a blanket. Williams admits that he knew other inmates did not receive their blankets when linens were distributed. This conduct – assumed to be true for the purpose of analysis – does not constitute the type of arbitrary or excessive conduct from which an inference may be drawn that Defendants acted with intent to punish Williams when they failed to provide him when linens were distributed to other N-block inmates. *Stearns*, 957 F.3d at 905. Furthermore, Williams essentially asserts Defendants were negligent in failing to provide him a blanket for the night of February 9th which is insufficient under § 1983. *See e.g., Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018) (mere negligence, even gross negligence, is insufficient to sustain a § 1983 claim).

As proof of discrimination, Williams testified that other inmates in his cell, who he believed to be Caucasian, received their blankets. (ECF No. 14-7 at 39 & 52). All inmates in

---

[7] These cases were all decided before *Stearns*.

Williams' cell were sex offenders as were many individuals in N-block. *Id*. at 53. As noted above Williams did not know if the other African American inmates in the cell were denied their blankets. *Id*. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (unequal treatment of inmates on one occasion did not violate the Fourteenth Amendment, even if inmates of another race were not treated the same). Construing these allegations as an Equal Protection claim, there are simply no facts from which an inference can be made that Williams was treated differently from other inmates because he belonged to a protected class. *Seltzer-Bey*, 66 F.3d at 964; *Lewis*, 486 F.3d at 1028 ("unequal treatment of persons who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination") (cleaned up). No genuine issue of material fact exists as to whether Defendants violated Williams' constitutional rights.

### B. Physical Injury Requirement

"Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008); *see also Bell*, 441 U.S. 539 n.21). The PLRA[8] engrafted this principle and provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) & (e)(h)(including pretrial detainees in the definition of the term prisoner).

The Eighth Circuit has interpreted § 1997e(e) "as limiting recovery for mental or emotional damages in all federal actions brought by prisoners." *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir.

---

[8] Prison Litigation Reform Act.

2004). The Court has construed "the PLRA to require more than a *de minimis* physical injury." *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018). Thus, to recover compensatory damages, Williams must show he suffered a physical injury that is more than *de minimis*. *Id*. As an example, the appellate court has found headaches, cramps, nosebleeds, and dizziness to be *de minimis*. *Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir. 2006).

Here, Williams testified he had the sniffles and a runny nose. Assuming for analysis that Williams had these ailments, they are not more serious than those found to be *de minimis* in *Munn*. Even had the Court found a constitutional violation exists, Section 1997e(e) would preclude Williams from recovering compensatory damages. *Royal, supra.*

### C.  Qualified Immunity

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

"[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; [and] (2) demonstrate that the alleged right is clearly established." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996); *see also Johnson v. Fankell*, 520 U.S. 911, 915 (1997). The Court is free to address the questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A government official is entitled

to qualified immunity unless the answer to both questions is "yes." *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982).

Here, the Court has found that Williams has failed to allege a violation of a constitutional right. Therefore, the Court's qualified immunity inquiry ends here. *See e.g., Krout v. Goemmer,* 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity). Defendants are entitled to qualified immunity.

### D. Official Capacity Claims

An official capacity claim is considered a claim against the employing governmental entity, here, Washington County. *Crawford v. Van Buren Cnty*., 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 699 (8th Cir. 2016)(citations omitted).

Williams does not allege that Washington County's policies or customs were intentionally punitive. *Stearns,* 957 F.3d at 907. "To succeed on his conditions-of-confinement claim, he must show that [Washington County's] policies or customs caused conditions that were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* Williams merely contends the Defendants did not adhere to policy – simply that they did not properly do their jobs. This is insufficient to state an official policy claim. *See e.g., Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) (failure to follow policy does not state a claim for relief under § 1983). Furthermore, where no individual defendant has violated the constitution, the governmental employer may not be held liable. *See Ivey v. Audrain Cnty*., Mo.,

968 F.3d 845, 851 (8th Cir. 2020) (if the individual officers are entitled to qualified immunity under the first prong of the analysis, i.e., no evidence of a constitutional violation, then the county cannot be held liable); *Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010) (holding that there was no need to consider a pretrial detainee's failure to protect claim against the city when there was no evidence that any of the individual officers committed a constitutional violation). For these reasons, the Court finds no basis for an official policy claim.

## IV.   CONCLUSION

It is therefore recommended that Defendants' Motion for Summary Judgment (ECF No. 12) be **GRANTED,** and this case be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of December 2022.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE